UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOB ADAMS, et al.,                             ) | |
|                                                          ) | |
|            Plaintiffs,     ) | |
|                                                          ) | |
|     v.                                ) | CASE NO. 1:05-cv-1395-DFH-TAB |
|                                                          ) | |
| INDIANA NEWSPAPERS, INC. d/b/a     ) | |
| THE STAR PRESS a/w GANNETT     ) | |
| COMPANY, INC.,                              ) | |
|                                                          ) | |
|        Defendant.     ) | |

ENTRY ON PLAINTIFFS' MOTION TO REMAND

Plaintiffs work as haulers and motor carrier drivers for defendant Indiana Newspapers, Inc., a newspaper printing and distribution business. They are represented by the Graphic Communications International Union, Local 17-M (the "Union"), which has a collective bargaining agreement ("CBA") with Indiana Newspapers. In 2004, Indiana Newspapers and the Union arbitrated a grievance concerning defendant's refusal to pay plaintiffs a "vehicle improvement bonus" provided by the CBA. Defendant argued that its obligation to pay the bonuses ended when the CBA expired on July 21, 2004.

The arbitrator concluded that defendant's obligation to pay the bonuses extended through negotiations for a new agreement and ordered defendant to pay the bonuses that were due on July 22, 2004. Defendant ultimately paid the

bonuses in April 2005. The plaintiffs then brought suit in Indiana state court alleging that defendant's failure to timely pay the bonuses violated the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, *et seq.* Plaintiffs seek liquidated damages and attorney fees under the statute.

Defendant removed the action to this court, contending that plaintiffs' claims are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs have moved to remand, arguing that their claims are not preempted and therefore this court lacks subject matter jurisdiction. As in other similar cases, the preemption question here requires the court to trace some unusually fine distinctions in the case law of both the Supreme Court and the Seventh Circuit. Because the plaintiffs assert state law claims that are not derived from nor substantially dependent upon analysis of the CBA, their claims are not preempted and the motion to remand is granted.

*Factual Background*

The relevant CBA provides a vehicle improvement bonus to covered employees "for the express purpose of making necessary tune-ups and repairs on vehicles used in the service of the Company." Cplt. Ex. A (Art. 5, § 9). According to plaintiffs, in July 2004, defendant indicated that it was not going to pay vehicle improvement bonuses for 2004. Cplt. ¶ 6. Defendant took the position that the bonuses were to be paid only on the dates and in the amounts specified by the CBA. The latest date listed in the CBA was July 22, 2003 and the agreement

expired by its terms on July 21, 2004.  The plaintiffs argued that the parties had agreed to an extension of the CBA during negotiations for a new agreement and therefore they were entitled to the bonuses.  Cplt. ¶ 4.

On or about August 10, 2004, the Union filed grievances for breach of the CBA on behalf of the haulers and motor carrier drivers who worked for the defendant.  Cplt. ¶¶ 7, 11.  Defendant initially contended that it had no obligation to arbitrate these grievances because the CBA had expired.  The Union filed a complaint to compel arbitration in this court.  See *Graphic Communications Union No. 17-M v. Indiana Newspapers, Inc.*, No. 1:04-cv-1839 (S.D. Ind. Nov. 8, 2004).  The defendant and the Union ultimately agreed to arbitrate the grievances pursuant to the grievance and arbitration provisions of the CBA, and the complaint to compel arbitration was voluntarily dismissed.  Cplt. ¶ 8.  The parties agreed to arbitrate on behalf of the haulers and to have the arbitration of that grievance govern the motor carrier drivers as well.

On April 4, 2005, the arbitrator rendered a decision and an award.  Cplt. ¶ 9.  The arbitrator found that Indiana Newspapers violated the CBA in refusing to pay each hauler a $215 vehicle improvement bonus on or shortly after July 22, 2004.  See Cplt. Ex. B at 12.  The award ordered the defendant to pay each hauler the $215 bonus.  The arbitrator denied the Union's request for interest on the payments and for relief that the haulers "otherwise be made whole."  *Id.* at 11.

The defendant paid vehicle improvement bonuses in the amount of $215 to each hauler and motor carrier driver between the dates of April 22 and April 29, 2005. Cplt. ¶ 13. Shortly thereafter, the Union withdrew its grievance filed on behalf of the motor carrier drivers. Cplt. ¶ 14.

On August 15, 2005, the haulers and motor carrier drivers filed this action in the Delaware Circuit Court alleging that defendant's failure to timely pay the vehicle improvement bonuses violated the Indiana Wage Payment Statute. Indiana Newspapers removed the case to this court, contending that plaintiffs' claims "necessarily involve the examination and interpretation of the CBA" and therefore fall within federal jurisdiction under the doctrine of complete preemption. Notice of Removal ¶ 5. Plaintiffs then moved to remand.

*Analysis*

I.    *General Principles of Preemption*

A defendant may remove an action originally filed in state court to federal court if the action could have been filed in federal court in the first instance. See 28 U.S.C. § 1441(a). Absent diversity of citizenship, a case may be filed in federal court only when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This long-established principle is known as the "well-pleaded complaint rule." In some fields, however, the preemptive force of a federal statute is so

"extraordinary" that it converts a state law cause of action into a federal claim for purposes of the well-pleaded complaint rule. *Id.* at 393. In such cases of complete preemption, the plaintiff's claim is considered "purely a creature of federal law" even if state law would provide a cause of action in the absence of the federal statute. *Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 23 (1983). A defendant may properly remove a suit to federal court when the complaint presents a claim completely preempted by federal law. See *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968) (state law suit to enjoin strike was properly removed to federal court despite plaintiff's failure to plead a federal cause of action).

This doctrine of complete or field preemption emerged from cases interpreting the Labor Management Relations Act ("LMRA"), which remains the archetype for application of the doctrine. Section 301 of the LMRA gives federal district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). In *Avco* and *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448 (1957), the Supreme Court interpreted this grant of jurisdiction as also displacing state law entirely in lawsuits for breach of federally-supervised collective bargaining agreements, so that a state court complaint alleging breach of a collective bargaining agreement is deemed to present a claim arising under federal law despite the apparent reliance on only state law.

Complete preemption under the LMRA serves two purposes. First, it ensures uniformity in the interpretation of collective bargaining agreements. See *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 498 (7th Cir. 1996). It also prevents parties from using state-law litigation to avoid the grievance and arbitration procedures provided by collective bargaining agreements. *Id.* at 501.

Nevertheless, section 301 does not preempt all disputes between union members and their employers. It is well established that § 301 completely preempts a state law claim only where that claim is "founded directly on rights created by" a collective bargaining agreement or where it is "substantially dependent on analysis of" a collective bargaining agreement. *Caterpillar*, 482 U.S. at 394 (claims for breach of individual employment contracts were not preempted and therefore were not removable despite employer's defense that the contracts were superseded by subsequent collective bargaining agreements), quoting *International Brotherhood of Electrical Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987); see also *In re Bentz Metal Products Co., Inc.*, 253 F.3d 283, 285 (7th Cir. 2001) (*en banc*) (employees' right to file mechanic's lien under state law to secure unpaid vacation pay owed under collective bargaining agreement by employer in bankruptcy was not preempted by § 301 where parties stipulated to the amount owed); *Pauley v. Ford Electronics & Refrigeration Corp.*, 941 F. Supp. 794, 802 (S.D. Ind. 1996) (remanding action where plaintiff alleged that employer recruited her by making a false promise about her individual wage rate different

from the collective bargaining agreement's designation of the controlling wage rate).

II.    *Plaintiffs' Claims*

The plaintiffs' claims in this suit are not "founded directly on rights created by" the CBA. Their claims are based on the Indiana Wage Payment Statute. That statute provides that if an employer fails to pay wages within 10 days of the date they are earned, it must pay liquidated damages for each day that the amount remains unpaid in an amount equal to 10% of the wages due, not to exceed double the amount of wages due. *Atchley*, 101 F.3d at 498, citing Ind. Code §§ 22-2-5-1, -2; see also *Highhouse v. Midwest Orthopedic Institute, P.C.*, 807 N.E.2d 737, 739 (Ind. 2004). The statute permits recovery of liquidated damages for the untimely payment of wages even if the employer already has paid the wages owed. See Ind. Code § 22-2-5-2. In a successful action to recover wages and/or liquidated damages, the plaintiff also may recover attorney fees. *Id.*

In this case, the defendant has paid the vehicle improvement bonuses for 2004. The plaintiffs seek only liquidated damages and attorney fees for the untimely payment of the bonuses. Any right to this relief is created not by the CBA but by Indiana law. The right exists apart from and above the right to the bonuses themselves. *E.g.*, *Bentz Metal*, 253 F.3d at 285 (*en banc* decision overruling *In re Bluffton Casting Corp.*, 186 F.3d 857 (7th Cir. 1999), which had held that employee's right to mechanic's lien under Indiana law to secure vacation

pay provided by collective bargaining agreement was "founded on the CBA" and therefore preempted; *Bluffton Casting* read this phrase too broadly).

Therefore, plaintiffs' claims in this suit are preempted only if they are "substantially dependent on analysis of" the CBA. They are not. The arbitrator already has determined that defendant owed the vehicle improvement bonuses on or shortly after July 22, 2004. Defendant paid the bonuses late – sometime between April 22 and April 29, 2005 for each plaintiff. A court need only perform a simple damages calculation based on these two dates and the amount awarded by the arbitrator.

In *Livadas v. Bradshaw*, 512 U.S. 107 (1994), the Supreme Court held that a similar state law claim for damages for the late payment of wages was not preempted by § 301. In that case, a supermarket employee demanded immediate payment of her earned wages upon discharge as required by California law. The store manager refused, referring to a company policy of mailing payments from a central payroll office. The employee received a check for the full amount three days later.

The employee then filed a claim with the state Division of Labor Standards Enforcement claiming that her former employer was liable for a sum equal to three days' wages under a state statute that penalized employers for the late payment of wages. The state labor commissioner declined to pursue the claim, taking the

position that another state statute precluded her from adjudicating any dispute involving the interpretation or application of a collective bargaining agreement containing an arbitration clause. *Id.* at 112-13. The employee brought suit in federal court claiming that the commissioner's non-enforcement policy was itself preempted by the NLRA. *Id.* at 113. The Supreme Court eventually addressed the commissioner's defense that § 301 of the LMRA precluded enforcement of the employee's claim. See *id.* at 121-25.

The Court concluded that § 301 preemption did not protect the commissioner's non-enforcement policy. *Id.* at 122. The Court noted that the primary text for resolving the plaintiff's claim was not the collective bargaining agreement but a calendar. *Id.* at 124. There was no dispute over the amount of penalty to which she would be entitled. The only issue was whether the store had "willfully failed" to pay her wages promptly upon severance. This was a question of state law, independent of any understanding embodied in the collective bargaining agreement. *Id.* at 124-25. The Court stated that "when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Id.* at 125, citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988) (holding retaliatory discharge claim was not preempted by § 301 even though a collective bargaining agreement might contain information such as rate of pay and other economic benefits helpful in determining damages). The Court also noted that there was no indication that the

parties to the collective bargaining agreement intended arbitration to cover independent state law claims.  512 U.S. at 125.

In this case, as in *Livadas*, there is no dispute that the bonuses were owed to the plaintiffs.  Here, an arbitrator already has determined the amount and the date on which they were owed.  Determining when the defendant actually paid the bonuses is a purely factual question, not requiring interpretation of the CBA.  The primary texts for resolving plaintiffs' claims for liquidated damages are the arbitrator's decision and a calendar.

This case is different from other cases where the Seventh Circuit has held that claims brought under state wage acts were preempted by § 301.  In *National Metalcrafters v. McNeil*, 784 F.2d 817 (7th Cir. 1986), an employer sued in federal court for a declaration that the Illinois Wage Payment and Collection Act could not be used to order it to pay vacation benefits to striking employees after the state administrator of the Act ruled that the employer was required to do so.  The employer argued that application of the state statute was preempted by ERISA, the NLRA, and the LMRA.  The Seventh Circuit did not reach the ERISA preemption issue but held that the dispute was preempted by both the NLRA and the LMRA.  *Id.* at 823.

With respect to the LMRA, the state administrator argued that the state statute was not preempted where the employer's refusal to pay wages or benefits

-10-

amounted to willful nonpayment because the employer's obligation was clear under the collective bargaining agreement. *Id.* The court expressed doubts that the employees' entitlement to vacation pay was as clear as the administrator suggested, noting that the agreement could be read not to provide for vesting of those benefits under the circumstances present in the case. *Id.* at 823-24. The court therefore found an "arguable contract dispute " and pointed out that the state statute on which the plaintiffs relied did not create an entitlement to benefits outside of the collective bargaining agreement. *Id.* at 824. The statute afforded recovery only if the employer had breached the agreement. Because a determination of whether it had done so required interpretation of that agreement, the issue had to be resolved through arbitration and the action under state law was preempted. *Id.*; see also *Shales v. Asphalt Maintenance, Inc.*, 2004 WL 2191609 (N.D. Ill. Sept. 28, 2004) (plaintiffs' claims against company owner and officer for violation of Illinois Wage Payment and Collection Act and common law conversion were preempted by the LMRA where claims required determination under collective bargaining agreement as to whether, how much, and to whom defendant should have paid money into pension and health and welfare funds).

In *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495 (7th Cir. 1996), the Seventh Circuit considered whether claims brought under the Indiana Wage Payment Statute – the same statute at issue here – were preempted by § 301. In that case, the union and the employer had negotiated a new collective bargaining agreement. The final written agreement provided that all employees in the unit

would receive a wage increase and the employer also orally agreed to pay a ratification bonus to employees who were members of the unit on the ratification date. *Id.* at 497. At some point, the union filed a grievance alleging that the employer had failed to pay the wage increases and bonuses. The grievance was denied at the first step, at which time the employer paid the wage increases. The employer paid the ratification bonuses following execution of the formal agreement.

The parties agreed that the amounts ultimately paid by the employer were correct. But the union then sued in state court seeking liquidated damages and attorney fees under Indiana law for late payment of these sums. *Id.* at 498. The employer removed the union's action to federal court on the grounds of preemption under § 301 and the district court denied the union's motion to remand. The court reasoned that the collective bargaining agreement would need to be interpreted, not merely referenced, to determine when the wage increases were to be implemented and paid. *Id.* at 499. The court then granted the employer's motion to dismiss because the union had failed to exhaust the arbitration remedies in the collective bargaining agreement.

On appeal, the Seventh Circuit agreed that both the written and oral collective bargaining agreements would need to be interpreted to determine when the employer became obligated to pay the wage increases and bonuses. *Id.* at 500.

The court distinguished *Livadas* on the basis that the penalty in that case could be calculated simply by looking to the employee's termination date.  *Id.*

The court also agreed that the case was properly dismissed from federal court.  It noted that § 301 creates a "strong preference for arbitration as a method for resolving labor disputes."  *Id.* at 501.  It pointed out that the union had not advanced its claim to binding arbitration, the final step in the grievance process. *Id.* at 502.  The court concluded with a caution that applies directly to this case: its decision did "not mean that whenever a collective bargaining agreement exists interpretation of that agreement always will be required in connection with the Indiana wage payment statute and that the statute always will be preempted by § 301."  *Id.*

Finally, in *Baker v. Kingsley*, 387 F.3d 649 (7th Cir. 2004), the Seventh Circuit again held that claims brought under the Illinois Wage Payment and Collection Act were preempted by § 301.  The plaintiffs alleged that the defendants had violated the Act by failing to pay wage supplements pursuant to a shutdown agreement following a plant closure.  *Id.* at 658.  The court determined that the plaintiffs' claims turned on whether they had been terminated or permanently laid off within the meaning of the shutdown agreement.  *Id.* at 659.  Because resolution of the plaintiffs' claims required interpretation of that agreement, the court held that their claims were preempted and the district court's remand to state court had been improper.  The court instructed the district court on remand

to consider the defendants' arguments in favor of dismissal of the resulting § 301 claim, presumably for failure to exhaust the agreement's grievance procedures. *Id.* at 659-60.

In *McNeil* and *Baker*, the employees' entitlement to the claimed benefits under the collective bargaining agreement were "fairly debatable" and depended on the interpretation of the agreement. In *Atchley*, there was no dispute that the plaintiffs were entitled to the wage increases and bonuses, but it was unclear under the agreement when those benefits had become due. In all three cases, therefore, a court would be required to interpret the collective bargaining agreement to resolve the state law claims. By contrast, in this case, the arbitrator already has decided whether and when the plaintiffs were entitled to the vehicle improvement bonuses and how much they were entitled to receive. To resolve plaintiffs' state law claims, a court need not interpret the CBA and decide those issues.

In a footnote, defendant offers its only specific argument as to how the plaintiffs' claims in this suit might require a court to look to the CBA. Defendant argues that a court will be required to interpret the CBA to determine whether the vehicle improvement bonuses qualify as "wages" under the Indiana Wage Payment Statute. See Def. Br. at 11 n.3. Under Indiana law, a "wage" is defined as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in

any other method of calculating such amount." See Ind. Code § 22-2-9-1. A bonus is a wage if it represents compensation for an employee's time, effort, or product and is not linked to a contingency such as the financial success of the employer. See *Highhouse v. Midwest Orthopedic Institute, P.C.*, 807 N.E.2d 737, 740 (Ind. 2004), citing *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121-22 (7th Cir. 1998), and *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1113 (S.D. Ind. 2001).

Whether the vehicle improvement bonuses qualify as wages under the statute is a question of state law that is not substantially dependent upon analysis of the CBA. The Supreme Court has cautioned that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." See *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985), quoted in *Baker*, 387 F.3d at 657 and *Bentz Metal*, 253 F.3d at 286. Similarly, the Seventh Circuit has stated that "a state law claim is not preempted if it does not require interpretation of the CBA even if it may require reference to the CBA." *Bentz Metal*, 253 F.3d at 285.

In some cases where courts have held claims not preempted by § 301, the issue to be decided under state law was a factual issue wholly independent of the collective bargaining agreement. See, *e.g.*, *Livadas*, 512 U.S. at 124-25 (whether an employer "willfully" failed to pay wages); *Lingle*, 486 U.S. at 407 (resolution of

retaliatory discharge claim involved "purely factual questions" about the conduct of the employee and the conduct and motivation of the employer). In other cases, courts have held that a state law claim was preempted because resolution of the claim would have defined duties owed under a collective bargaining agreement or required substantial interpretation of that agreement. See, *e.g.*, *Lueck*, 471 U.S. at 215 (state law claim for bad faith handling of worker's compensation claim was preempted because employee's right to worker's compensation and employer's duty of good faith both derived from agreement); *Hechler*, 481 U.S. at 861-62 (action against union for breach of duty of care to provide safe workplace was preempted where nature and scope of duty were defined by agreement); *Chapple v. National Starch and Chemical Co.*, 178 F.3d 501, 508 (7th Cir. 1999) (wrongful discharge and emotional distress claims required comparing employer's conduct with conduct permitted by the management rights clause of collective bargaining agreement).

This case does not fit neatly into either category. In this case, plaintiffs have alleged that the vehicle improvement bonuses "are available for use by the individual hauler or motor carrier for specific purposes designated in the CBA and are part of the overall compensation package upon which . . . employees depend." Cplt. ¶ 5. In determining whether the bonuses qualify as wages under Indiana's Wage Payment Statute, a court would need to reference the CBA to ascertain the nature and purpose of the bonuses and how they are calculated. A court would then determine whether, as a matter of Indiana law, the bonuses qualify as wages.

This inquiry does not require interpretation of the terms of the CBA itself.  And "when the *meaning* of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Atchley*, 101 F.3d at 499, quoting *Livadas*, 512 U.S. at 124 (emphasis added); see also *Lingle*, 486 U.S. at 413 n.12 ("[A] state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement.  In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not thereby be preempted."); cf. *Lueck*, 471 U.S. at 210 ("A state rule that purports to define the meaning or scope of a term in a contract suit . . . is pre-empted by federal labor law.").  It would make little sense to find that the plaintiffs' claims were preempted, and thus removable to federal court, because they might require resolution of a disputed issue of state law.  Resolution of such an issue does not implicate the "interests in interpretive uniformity and predictability" of federal law that are at the heart of the preemption doctrine.  See *Lueck*, 471 U.S. at 211.

Plaintiffs have analogized their case to *Stump v. Cyprus Kanawha Corp.*, 919 F. Supp. 221 (S.D. W.Va. 1995), where former employees brought suit under the West Virginia Wage Payment and Collection Act to recover back pay and liquidated damages.  An arbitrator already had interpreted the collective bargaining agreement and determined the plaintiffs' entitlement to the back pay.

The defendants argued that the plaintiffs' claims were preempted by § 301 and removed the action to federal court.

The court concluded that the claims were not preempted and granted the plaintiffs' motion to remand. It noted that the plaintiffs had exhausted their remedies as to the arbitration decision and all that remained was the calculation of an amount of back pay and damages. 919 F. Supp. at 225. The court reasoned that a state court need only consult, not interpret, the relevant collective bargaining agreement to determine those amounts. *Id.* 224-25. The court also rejected the defendants' argument that the plaintiffs should be limited to enforcing the arbitration decision without obtaining liquidated damages under state law. *Id.* at 224. Relying on *Livadas* and the Second Circuit's decision in *Albradco, Inc. v. Bevona*, 982 F.2d 82 (2d Cir. 1992), the court held that the plaintiffs could both enforce the arbitration decision and pursue liquidated damages under the state statute, regardless of the existence of a collective bargaining agreement. 919 F. Supp. at 225.[1]

---

[1]*Albradco* involved an appeal of a federal court's dismissal of a declaratory judgment action for lack of subject matter jurisdiction. The sole shareholder and former president of a corporation filed suit in federal court seeking a declaration that a state court action brought against them by the union associated with the corporation was preempted by both ERISA and the LMRA. The union had succeeded earlier in obtaining two arbitration awards against the corporation for wages and contributions to pension and health benefit funds, which resulted in the corporation filing for Chapter 11 bankruptcy. The union then sued the shareholder and former president under a New York statute that made them personally liable for "all debts, wages or salaries due and owing" to the corporation's employees.

(continued...)

Defendant argues that *Stump* and *Albradco* are distinguishable because those cases were essentially debt collection actions, brought by the plaintiffs to recover both the wages themselves and liquidated damages for failure to pay those wages. Defendant points out that it has already paid the bonuses owed to the plaintiffs. This distinction make no difference for purposes of the preemption question. In *Stump*, the plaintiffs similarly sought liquidated damages that had not been awarded in arbitration. And as here, the right to liquidated damages was found in a state statute, not a collective bargaining agreement.

Defendant also argues that the plaintiffs' claims are preempted because they seek to expand on the remedies that were awarded in arbitration and, in fact, seek a remedy that the arbitrator explicitly rejected. Defendant argues that plaintiffs' action "is essentially one to modify an arbitrator's award," which may only be brought pursuant to 29 U.S.C. § 185(a) and 9 U.S.C. §§ 9-11, and not as a separate lawsuit. Defendant also points out that the arbitrator denied the

---

[1](...continued)
The Second Circuit held that the federal declaratory judgment was properly dismissed because the state court action brought by the union was not preempted by either ERISA or the LMRA. 982 F.2d at 87-88. With respect to the LMRA, the court concluded that the state court would not need to interpret the collective bargaining agreement because, as in this case, the state court would be required to follow the determinations already made in arbitration. *Id.* at 87. See also *Romney v. Lin*, 94 F.3d 74, 83 (2d Cir. 1996) (*Albradco* held that § 301 did not preempt the plaintiffs' action because "(1) the New York statute was a remedy for a right (determined by arbitration) that was independent of any collective bargaining agreement, and (2) resolution of the New York claim did not require an interpretation of a collective bargaining agreement").

plaintiffs' request for interest on their award and their request to "otherwise be made whole."

The arguments are not persuasive. First, the arbitrator did not decide the issues presented here. The arbitrator denied the haulers' request for interest, concluding that the common practice in arbitration was not to award interest where it was not provided for by the collective bargaining agreement. The arbitrator denied the haulers' request for other relief because he found no evidence that they had suffered damages besides the denial of the $215 bonus. Cplt. Ex. B at 11. The arbitrator's findings do not control plaintiffs' claim for liquidated damages under a state statute intended to penalize employers and to deter the late payment of wages.

Second, plaintiffs' action is not an impermissible attempt to modify or expand upon the arbitrator's decision. For purposes of § 301 preemption, the issue is not whether a plaintiff's state law claim implicates the same conduct as a claim that must be brought in arbitration pursuant to the collective bargaining agreement. See *Lingle*, 486 U.S. at 408-10, 412-13 (plaintiff's retaliatory discharge claim was not preempted by § 301 simply because the collective bargaining agreement contained a just-cause provision such that a state court might need to decide the same issues or address the same facts as an arbitrator). Rather, the pertinent issue is whether the state law claim can be resolved without interpreting the collective bargaining agreement. Accordingly, defendant's

arguments about the disruptive effects of state court suits on the exclusivity of arbitration are without force in these circumstances. See *Lingle*, 486 U.S. at 412-13 (acknowledging that a court's resolution of a state law retaliatory discharge claim might be inconsistent with an arbitrator's conclusion that the collective bargaining agreement did not prohibit a particular retaliatory discharge, even though both evaluated the same conduct).

Moreover, it is unclear whether the arbitrator would have even had the authority to award the relief the plaintiffs seek here. Plaintiffs argue that, if they had raised these state law claims during arbitration, and the arbitrator's award had included liquidated damages for the untimely payment of wages, that order could have been vacated on the ground that the arbitrator had exceeded the scope of his authority. See, *e.g.*, *Polk Brothers, Inc. v. Chicago Truck Drivers Union*, 973 F.2d 593, 597 (7th Cir. 1992) (an arbitrator's award is legitimate only so long as it draws its essence from the collective bargaining agreement, though courts are reluctant to upset an award on this basis), citing *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

The scope of an agreement to arbitrate is not unlimited but is based on the agreement of the parties. *Livadas*, 512 U.S. at 124 & n.17 (the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation does not require preemption because "the scope of the arbitral promise

is not itself unlimited"). As in *Livadas*, there is no indication that the parties here understood their arbitration agreement to cover these state law claims.

Defendant points out correctly that a state cannot be allowed to penalize or burden the right to collective bargaining. Under defendant's theory, though, the court would treat the collective bargaining agreement as repealing employees' non-negotiable rights under the Indiana Wage Payment Statute. The Supreme Court has stated more than once that § 301 must not be read broadly to preempt rights conferred on individual employees as a matter of state law. See *Livadas*, 512 U.S. at 123; *Lingle*, 486 U.S. at 409 ("§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements."). In fact, it would be "inconsistent with congressional intent to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lingle*, 486 U.S. at 410, n.10, quoting *Lueck*, 471 U.S. at 212.

Defendant also argues that a remand in this case would undermine the finality of arbitration in other cases by potentially subjecting every arbitration award of back pay to a lawsuit and liquidated damages. Defendant's argument fails to recognize the unusual circumstances presented here. This case involves an arbitrator's award for work actually performed. The Indiana Wage Payment

Statute has not been interpreted to apply to back pay awards resulting from lawsuits or arbitration awards setting aside employee terminations or suspensions.[2]

Ultimately, defendant's theory of preemption cannot be reconciled with the limits the Supreme Court has placed on that doctrine in *Livadas*, *Lingle*, *Caterpillar*, and *Lueck*.  Plaintiffs' claims are not substantially dependent on an analysis of the CBA and therefore are not preempted by § 301.  The court lacks subject matter jurisdiction over the action, and plaintiffs' motion to remand must be granted.

III.    *Attorney Fees Under 28 U.S.C. § 1447(c)*

Plaintiffs have requested an award of attorney fees and costs under 28 U.S.C. § 1447(c), which allows a court remanding a case to order payment of costs and fees "incurred as a result of the removal."  The Seventh Circuit had established a presumption in favor of such awards.  See *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000).  The Supreme Court more recently adopted a different standard in *Martin v. Franklin Capital Corp.*, 546 U.S. —, 126 S. Ct. 704, 711 (2005), holding that courts may award fees under § 1447(c)

---

[2]The court has not found case law directly on this point, but court decisions and arbitration awards ordering back pay are so common that one would expect to find case law easily if the wage payment statute applied to such awards.

only when the removing party lacked an objectively reasonable basis for seeking removal.

In this case, Indiana Newspapers did not lack an objectively reasonable basis for seeking removal. Cf. *Hart v. Wal-Mart Stores, Inc. Associates' Health and Welfare Plan*, 360 F.3d 674 (7th Cir. 2004) (affirming award of attorney fees for improper removal where precise question of preemption had been decided twice before by Seventh Circuit in nearly identical cases). Although it "has become clear . . . that preemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependent on an interpretation of a CBA," *Bentz Metal*, 253 F.3d at 286, determining whether a claim is "sufficiently dependent" on interpretation of the CBA to be preempted "continues to cause some bewilderment." *Id. Bentz Metal* was itself a six-to-five decision, and in dissent, Judge Bauer wrote that he agreed with the majority that "the applicable legal principles are far 'easier to mouth than to apply.'" *Id.* at 289. Also, there is no indication that defendant sought removal for the purpose of prolonging litigation and imposing costs on the plaintiffs. See *Martin*, 126 S. Ct. at 711. Accordingly, fees should not be awarded here.

*Conclusion*

For these reasons, plaintiffs' motion to remand (Docket No. 11) is hereby granted, but their request for attorney fees and costs under 28 U.S.C. § 1447(c)

is hereby denied.  This action is hereby remanded to the Delaware Circuit Court.

The parties shall bear their own costs and attorney fees in this court.


      So ordered.

Date: July 7, 2006

                                              _____
                                              DAVID F. HAMILTON, JUDGE
                                              United States District Court
                                              Southern District of Indiana

Copies to:

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE
wgroth@fdgtlaborlaw.com

Geoffrey S. Lohman
FILLENWARTH DENNERLINE GROTH & TOWE
glohman@fdgtlaborlaw.com

Heather L. MacDougall
BAKER & DANIELS
heather.macdougall@bakerd.com

John T. Neighbours
BAKER & DANIELS
jtneighb@bakerd.com